# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO: 00-10992 |
| THE BABCOCK & WILCOX COMPANY, | § § § | CHAPTER 11 |
| DEBTOR. | § § § § | SECTION A |
| THE BABCOCK & WILCOX COMPANY, | § § § § | |
| PLAINTIFF, | § § | ADV. NO. 21-1014 |
| V. | § § § | |
| PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING LLC, PES LIQUIDATING TRUST, WESTPORT INSURANCE COMPANY, XL INSURANCE AMERICA, INC., ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, HDI GLOBAL INSURANCE COMPANY, AND CERTAIN UNDERWRITERS AT LLOYD'S LONDON-SYNDICATE 1221 (NAVIGATORS), ZURICH AMERICAN INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO ENNMG1800181, CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO ENNMG1800281, CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO ENNMG1800282, CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO EN100070-18, | § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| DEFENDANTS. | § § | |

## MEMORANDUM OPINION AND ORDER

The sole count in the above-captioned adversary proceeding filed by The Babcock & Wilcox Company ("B&W") seeks (i) a declaration that the confirmed plan of reorganization (the "Plan") in B&W's 2000 bankruptcy case discharged the claims now asserted against B&W entities[1] in a Pennsylvania state court by two of the above-named Defendants, Philadelphia Energy Solutions Refining & Marketing, LLC ("PESRM"), and PES Liquidating Trust (together, the "Defendants"); and (ii) enforcement of the confirmed Plan's discharge injunction. [ECF Doc. 34, ¶ 38].[2] The Pennsylvania state court action asserts non-asbestos-related products-liability claims against B&W entities stemming from a 2019 explosion at a refinery formerly operated by PESRM that was allegedly caused by the failure of an elbow joint manufactured by B&W and installed in the refinery in the 1970s. [ECF Doc. 34, ¶¶ 29–31 & Ex. A, ¶¶ 15 & 17].

B&W and the Defendants filed cross-motions for summary judgment. [ECF Docs. 82 & 138]. For the reasons stated in this Court's *Memorandum Opinion* dated July 2, 2024, the Court denied both motions. [ECF Doc. 199]. Now before the Court is B&W's second motion for summary judgment and statement of uncontested facts. [ECF Docs. 209 & 210]. B&W seeks

---

[1] According to the Amended Complaint filed by B&W in the above-captioned adversary proceeding:

> On February 26, 2021, PES filed the State Court Complaint in the Court of Common Pleas of Philadelphia, asserting claims of negligence, strict liability, and breach of implied warranties, against B&W, Babcock & Wilcox Holdings, LLC, and Babcock & Wilcox Enterprises, Inc. Babcock & Wilcox Holdings, LLC and Babcock & Wilcox Enterprises, Inc. . . . were not formed and did not come into existence until 2015.

[ECF Doc. 34, ¶ 28]. B&W also noted that "PES . . . incorrectly designated Babcock & Wilcox Company as a defendant. There is no legal entity with the name of Babcock & Wilcox Company." [ECF Doc. 34, n.3].

[2] On October 24, 2023, the following entities were allowed to intervene as plaintiffs in this adversary proceeding: (i) Westchester Fire Insurance Company; (ii) Ace Property & Casualty Insurance Company; (iii) Indian Harbor Insurance Company; (iv) Starr Surplus Lines Insurance Company; and (v) The Members of Lloyd's Syndicate 1861 as constituted for the 2019 underwriting year of account acting through their managing agent Canopius Managing Agents Limited (collectively, the "Reorganized B&W Insurers"). The Reorganized B&W Insurers have not joined or filed any motion for summary judgment.

2

summary judgment on two alternative theories, discussed below. The Defendants filed an opposition to the motion as well as their own statement of uncontested facts. [ECF Docs. 221 & 222]. B&W filed a reply in support of the motion. [ECF Doc. 223]. After oral argument, the parties each submitted supplemental briefing. [ECF Docs. 234 & 235]. For the reasons below, the Court **DENIES** B&W's second motion for summary judgment.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The confirmed plan of reorganization in B&W's bankruptcy case also reserved to this Court post-confirmation jurisdiction to resolve matters including, but not limited to, "all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan Documents or their interpretation, implementation, enforcement, or consummation." [No. 00-10992, ECF Doc. 7003, § 9.5.3].

The matter presently before the Court constitutes a core proceeding that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(B). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

This Court incorporates its recitation of undisputed facts submitted to the Court by the parties in prior cross-motions for summary judgment, particularly as it describes the history of B&W and nature of its business activities. [ECF Doc. 199]. In 2000, B&W and its affiliates filed petitions for chapter 11 bankruptcy relief primarily to deal with asbestos-related personal-liability claims. In 2006, the District Court confirmed the Plan proposed by B&W and its parent company. The Plan created the Asbestos PI Trust, funded with assets of B&W, its debtor-affiliates, as well as certain non-debtor affiliates; under the Plan, the Asbestos PI Trust would be the sole recourse

3

for payment of current and future asbestos-related claims against B&W. All other non-asbestos-related claims, include the class of general unsecured creditors, would be resolved directly by the Reorganized Debtors. In other words, those claims would be paid *pro rata* as directed in the Plan by proceeds generated by the Reorganized B&W's continuing operations.

In its second motion for summary judgment, B&W relies on several provisions in the Plan and Confirmation Order to encourage the Court to find as a matter of law that the non-asbestos-related products-liability claims asserted in the Pennsylvania state court action are dischargeable prepetition bankruptcy claims that have been discharged by the terms of the Plan. Specifically, B&W relies on the following provisions:

The Plan defines both "Claim" and "Contingent Claim." [No. 00-10992, ECF Doc. 7003, ¶¶ 1.1.51 & 1.1.56]. A Claim under the Plan is equivalent to a Claim under the Bankruptcy Code. *Compare* [No. 00-10992, ECF Doc. 7003, ¶ 1.1.51], *with* 11 U.S.C. § 101(5). The Plan also broadly defines "Contingent Claim":

> "Contingent Claim" shall mean any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened, or been triggered, as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the Debtor now or hereafter exists or previously existed.

[No. 00-10992, ECF Doc. 7003, ¶ 1.1.56].

With few exceptions not pertinent here, the Plan discharges and releases all prepetition claims against the Reorganized B&W and enjoins creditors from asserting those claims going forward:

> Except as otherwise provided in this Plan, the rights afforded in this Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued thereon from and after the

> Petition Date, against the Debtors and the Debtors in Possession, or their assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims against and Equity Interests in the Debtors and the Debtors in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, or any conduct for which any of the Debtors may be deemed to have strict liability under any applicable law) shall be satisfied, discharged, and released in full. **The Reorganized Debtors shall not be responsible for any obligations of the Debtors or the Debtors in Possession except (1) those expressly assumed by the Reorganized Debtors pursuant to this Plan and (2) those claims that pass through this Plan unimpaired pursuant to Section 3.2.8 herein. All Entities shall be precluded and forever barred from asserting against the Debtors, the Reorganized Debtors, the Asbestos Protected Parties, Settling Asbestos Insurance Entities, or their assets, properties, or interests in property any other or further Claims or Demands based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in this Plan.**

[No. 00-10992, ECF Doc. 7003, § 11.2 (emphasis added)].[3] The Order confirming the Plan further provides that "[e]xcept as otherwise provided in this Confirmation Order or the [Plan], all Claims shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, their respective successors, or their respective successors." [No. 00-10992, ECF Doc. 7053, ¶ 49].

B&W also cites to provisions in the Plan and Confirmation Order to support its theories (collectively, the "<u>Successor Provisions</u>"). In a provision entitled "No Successor Liability," the Plan states:

> Except as otherwise expressly provided in this Plan, **the Debtors, the Reorganized Debtors**, the Asbestos Claimants' Committee, the Future Claimants' Representative, and the Non-Debtor Affiliates **will not, pursuant to this Plan or otherwise, assume, agree to perform, pay, or indemnify creditors or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any of the Debtors' past or present Subsidiaries relating to or arising out of the**

---

[3] Section 3.2.8 of the Plan dealt with a class of prepetition claims against B&W arising out of the alleged presence of or exposure to nuclear contamination in two communities in Pennsylvania not implicated in this dispute.

> **operations of or assets of the Debtors or any of the Debtors' past or present Subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Confirmation Date. Neither the Non-Debtor Affiliates, the Reorganized Debtors, nor the Asbestos PI Trust is, or shall be, a successor** to the Debtors or any of the Debtors' past or present Subsidiaries by reason of any theory of law or equity, and **none shall have any successor or transferee liability of any kind or character**, except that the Reorganized Debtors and the Asbestos PI Trust shall assume the obligations specified in this Plan and the Confirmation Order.

[No. 00-10992, ECF Doc. 7003, § 7.20] (emphasis added).

In a provision entitled "Title to Assets; Discharge of Liabilities," the Plan states:

> Except as otherwise provided in this Plan, on the Effective Date, title to all of the Debtors' assets and properties and interests in property shall vest in the Reorganized Debtors **free and clear of all Claims, Equity Interests, Encumbrances, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors.**

[No. 00-10992, ECF Doc. 7003, § 11.10] (emphasis added).

The Confirmation Order further provides:

> On the Effective Date, the Reorganized Debtors, respectively, shall be vested with all of the assets and property of their former Bankruptcy Estates, free and clear of all Claims, liens, charges, and other interests of holders of Claims or Equity Interests, except to the extent specifically provided herein, in another order of this Court or the Bankruptcy Court, in the [Plan], or pursuant to the collateral arrangements entered into by the Reorganized Debtors in connection with the Exit Financing, and may operate their businesses free of any restrictions imposed by the Bankruptcy Code.

[No. 00-10992, ECF Doc. 7053, ¶ 15]. The Confirmation Order also provides:

> Except as specifically provided in the [Plan], the Plan Documents or in this Confirmation Order, the rights afforded in the [Plan] and Plan Documents and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction, discharge and release of all Claims, Demands and Equity Interests of any nature whatsoever, against the Debtors, the Debtors in Possession, and the Reorganized Debtors, or their assets, properties, or interests in property. Except as otherwise provided in the [Plan], the Plan Documents or in this Confirmation Order, on the Effective Date all Claims against and Equity Interests in the Debtors, the Debtors in Possession, and the Reorganized Debtors shall be satisfied, discharged, and released in full. **Except as otherwise provided in the [Plan], the Plan Documents or this Confirmation Order, the Reorganized**

> **Debtors shall not be responsible for any obligations of the Debtors or the Debtors in Possession except those expressly assumed by the Reorganized Debtors pursuant to the [Plan] and the other Plan Documents** and such settlement agreements relating to objections to confirmation as are expressly approved by this Court, and those claims that pass through the [Plan] unimpaired pursuant to section 3.2.8 therein. To the extent provided in the [Plan] and/or Plan Documents, all Entities shall be precluded and forever barred from asserting, against the Asbestos PI Trust and the Asbestos Protected Parties, or their assets, properties, or interests in property any other or further Claims or Demands based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in the [Plan] and Plan Documents or in this Confirmation Order.

[No. 00-10992, ECF Doc. 7053, ¶ 27] (emphasis added).

## ANALYSIS

### A. Summary Judgment Standard

A court grants summary judgment when the pleadings, discovery responses, and affidavits show no genuine dispute as to any material fact and the evidence entitles the movant to judgment at trial. *See* FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). No genuine dispute exists when "a rational trier of fact could not find for the [nonmovant] based upon the record evidence before the court." *James by James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A court views the facts and evidence in the light most favorable to the nonmovant. *See Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). If the movant fails to show an absence of a genuine issue of material fact, a court shall deny the movant's motion. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant must go beyond the pleadings and designate facts that show a genuine issue. *See* FED. R. CIV. P. 56(c)(1).

**B. A Genuine Issue of Material Fact Still Exists as to Whether Any Injury Related to the Failed Elbow Joint Manufactured by B&W Was Relatively Certain To Manifest at Some Point and Be Attributable to the Debtor.**

Section 1141 of the Bankruptcy Code outlines the effect of a confirmed plan of reorganization. With a few exceptions not relevant here and "[e]xcept as otherwise provided . . . in the plan, or in the order confirming the plan, the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A).[4] Section 524 of the Bankruptcy Code, describing the effect of a discharge, "shields a debtor from personal liability on claims that are discharged in bankruptcy." *In re Valaris PLC*, No. 20-34114, 2025 WL 392482, at *3 (Bankr. S.D. Tex. Feb. 4, 2025) (citing 11 U.S.C. § 524; *In re Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993)). Indeed, "[t]he debt itself is not extinguished, but the discharge acts as an injunction against any action pursued by creditors to recover on a claim against the debtor." *Id.*

Although the Bankruptcy Code defines "claim" broadly, *see* 11 U.S.C. § 101(5), there is a limit to the types of claims that are subject to a discharge injunction in a confirmed plan. A discharge injunction does not bar the pursuit of all claims against the debtor; instead, "[a] bankruptcy discharge acts as a permanent injunction against the holders of dischargeable claims against the Debtor." *In re Barry*, 330 B.R. 28, 36 (Bankr. D. Mass. 2005) (citing *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439 (1st Cir. 2000)). Defining the outer reaches of dischargeable claims implicates due-process concerns. As this Court has previously highlighted, "[t]reating unknown future claims in chapter 11 implicates two competing concerns: 'the Bankruptcy Code's goal of providing a debtor with a fresh start by resolving all claims arising from the debtor's conduct prior

---

[4] A "debt" is defined by the Bankruptcy Code as "liability on a claim." 11 U.S.C. § 101(12).

to its emergence from bankruptcy; and the rights of individuals who may be damaged by that conduct but are unaware of the potential harm at the time of the debtor's bankruptcy.'" [ECF Doc. 199 (citing *Wright v. Owens Corning*, 679 F.3d 101, 105 (3d Cir. 2012))]. Courts have developed various tests to determine the outer limit with respect to which claims are dischargeable claims under the Bankruptcy Code. As explained by the Court in its last opinion in this case, the Fifth Circuit employs the prepetition-relationship test to determine that outer limit:

> Acknowledging that "there must be evidence that would permit the debtor to identify, during the course of the bankruptcy proceedings, potential victims and thereby permit notice to these potential victims of the pendency of the proceedings," the Fifth Circuit has applied a "prepetition-relationship" test to determine whether a future prepetition claim exists. *Lemelle v. Universal Mfg. Grp.*, 18 F.3d 1268, 1277 (5th Cir. 1994) (citations omitted). That test requires "some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant." *Id.* (quoting *In re Piper Aircraft Corp.*, 162 B.R. 619, 627 (Bankr. S.D. Fla. 1994)).
>
> . . . .
>
> [Thus,] to find a future claim to be a dischargeable prepetition bankruptcy claim under the prepetition-relationship test, two conditions must exist: (1) the future injury must be relatively certain to manifest itself at some point and be attributable to the debtor and (2) the debtor must be able to identify the claimant to whom it can give notice sufficient to satisfy due process that his or her future claim might be discharged by a confirmation order.

[ECF Doc. 199, at 13–15]. Based on the competent summary judgment evidence before the Court associated with the parties' prior cross-motions for summary judgment, the Court found that

> B&W provided actual notice of its bankruptcy case to Sunoco, the owner of the GP Refinery that housed the elbow joint that ultimately failed. Sunoco participated in B&W's bankruptcy case and filed a proof of claim against the estate. . . . [T]he PES Entities share sufficient identity with Sunoco to be bound by the terms of the Joint Plan if the Pennsylvania state action claims are indeed prepetition claims that have been discharged through confirmation of the Joint Plan. But the competent and undisputed summary judgment evidence is inadequate to reveal whether any injury related to the failed elbow joint manufactured by B&W was relatively certain to manifest at some point. In other words, are the products-liability claims related to the failed elbow joint more like the claims in [*United Refining Co. v. Dorrion*, 688 F. Supp. 3d 558 (S.D. Tex. 2023)] and [*In re Piper Aircraft Corp.*, 162 B.R.

9

> 619, 627 (Bankr. S.D. Fla. 1994)] where the nature and scope of those injuries was known or foreseeable to B&W—or are they more akin to the claim in *Lemelle* [v. Universal Mfg. Grp., 18 F.3d 1268, 1277 (5th Cir. 1994)] where "the injury and the manifestation of that injury occurred simultaneously" years after the bankruptcy was filed? Without that evidence, this Court is unable to determine under the prepetition-relationship test whether the claims alleged in the Pennsylvania state court action are prepetition bankruptcy claims.

[ECF Doc. 199, at 15–16].

B&W now seeks summary judgment on the basis that the confirmed Plan by its own terms discharged the claims the Defendants have asserted in the Pennsylvania state court action. Specifically, B&W asserts that the scope and breadth of the Plan's definition of "Contingent Claim" and the language contained in the discharge injunction renders any analysis under the Fifth Circuit's prepetition-relationship test unnecessary and futile. B&W relies primarily on *In re G-I Holdings, Inc.* to support its argument, *see* 514 B.R. 720, 726 (Bankr. D.N.J. 2014), *subsequently aff'd sub nom. In re G–I Holdings Inc*, 654 F. App'x 571 (3d Cir. 2016), but this Court does not find that case to be particularly helpful here. In *G-I Holdings*, the debtor and its successor were subject to liability related to asbestos exposure from products they manufactured. A creditor asserting a $500 million asbestos-related property damage claim participated in the debtors' bankruptcy cases. After the court confirmed the plan treating those asbestos-related claims, the same creditor filed suit against the reorganized debtor, seeking equitable remedies for its asbestos-related claims. The confirmed plan in *G-I Holdings* broadly defined "claim" to include

> (i) a "claim," as defined in section 101(5) of the Bankruptcy Code, against G-I or [its successor], whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim; (ii) any Environmental Claim, whether or not it constitutes a "claim" under section 101(5) of the Bankruptcy Code; and (iii) **any rights to any equitable remedy**.

10

514 B.R. at 757 (emphasis added). The court straightforwardly found that the creditor was barred by *res judicata* from asserting its claims for equitable remedies related to its asbestos claims, stating that "[a]ny claim for asbestos property damage other than Class 7 treatment under any legal theory, including equitable remedies, is extinguished by the Plan and the Confirmation Order." *Id*. at 758. But that court was not forced to answer the question of whether a debtor can draft plan terms so broadly as to essentially contract itself out of all liability for future claims that may have not been known, contemplated, or envisioned by the debtor or a creditor at the time of confirmation.

The Court interprets B&W's argument as one that would allow a debtor to circumvent due process regarding future claims by drafting language in a plan that obliterates **any limit** to the types of claims that are subject to a discharge injunction in a confirmed plan. The Court rejects that assertion. To determine whether the claims asserted by the Defendants in the Pennsylvania state court action are dischargeable prepetition bankruptcy claims that were discharged through B&W's confirmed Plan, this Court is required to apply the Fifth Circuit's prepetition-relationship test after hearing the parties' evidence as to the two conditions that must exist to satisfy that test. Due process demands it.

Accordingly,

**IT IS ORDERED** that, to the extent that B&W seeks summary judgment on the basis that the confirmed Plan by its terms discharged the claims asserted by the Defendants in the Pennsylvania state court action, B&W's second motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that, to the extent that B&W seeks summary judgment on the issue of whether the Successor Provisions in the confirmed Plan release B&W from any

successor liability with respect to the claims now asserted against the B&W entities in the Pennsylvania state court action, B&W's second motion for summary judgment is **DENIED**.[5]

New Orleans, Louisiana, March 6, 2025.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

---

[5] "A dispute as to whether an asset purchaser can be held liable under the successorship doctrine is a matter of state law not federal." *In re Schwinn Bicycle Co.*, 210 B.R. 747, 756 (Bankr. N.D. Ill.), *aff'd sub nom. Schwinn Cycling & Fitness Inc. v. Benonis*, 217 B.R. 790 (N.D. Ill. 1997). As explained by the Seventh Circuit:

> It is true that Cary's [i.e., the predecessor-in-interest] assets were sold to Zerand [i.e., the successor-in-interest] free from all liens and other encumbrances. And such a cleansing of the assets in the bankruptcy sale is a valid power of a bankruptcy court, 11 U.S.C. §§ 363(f), 1141(c). But the Coxes [i.e., the plaintiffs in the state court lawsuit against the successor-in-interest] are not attempting to enforce a lien. It is also true that if, as in some asbestosis cases, unknown future product-liability tort creditors of the debtor, such as the Coxes, had been treated as claimants (or at least as parties in interest) in the Cary bankruptcy proceeding, provision would have been made for them there. Even then, the Coxes would not have been enjoined from suing Zerand; discharge operates as an injunction, but only against suing the debtor; the statute is explicit on this point, 11 U.S.C. § 524(e), though the Fourth Circuit has read in an exception (inapplicable here) for suits against guarantors of the debtor's debts when the plan of reorganization provides for the discharge of those debts. **Had the Coxes been parties to the bankruptcy proceeding, they would have had no possible basis for a suit against Zerand. But that is not because the bankruptcy court could and would enjoin such a suit; it is because the successorship doctrine on which they rely is inapplicable if the plaintiff had a chance to obtain a legal remedy against the predecessor, even so limited a remedy as that afforded by the filing of a claim in bankruptcy. The Coxes did not have any such chance, since the accident occurred after the bankruptcy proceeding had wound up. But if they did, still Zerand would have to interpose its defense in the Pennsylvania suit. It could not go to the bankruptcy court for relief.**

*Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994) (internal citations omitted) (emphasis added).

Here, the sole count in the Complaint is that the claims asserted in the Pennsylvania state court lawsuit were discharged by the confirmed plan of reorganization in B&W's 2000 bankruptcy case. [ECF Doc. 34, ¶ 38]. In other words, through the Fifth Circuit's prepetition-relationship test analysis, the Court is essentially being asked to determine whether the Defendants here "had a chance to obtain a legal remedy against the predecessor." *Zerand-Bernal*, 23 F.3d at 163. If they did, then the claims asserted in the Pennsylvania state court action were discharged and the successorship doctrine is inapplicable. If not, then any defenses as to the successorship doctrine must be asserted in the Pennsylvania state court, not the bankruptcy court.